THE UNITED STATES, APPELLANTS, *v.* JAMES D. GALBRAITH, JOHN SINE, DAVID T. BAYLEY, AND RICHARD H. STANTON.

Where the clear weight of the proof is against the possession or occupation by the grantee of land in California, the date of the grant was altered without any explanation of the alteration, and the genuineness of the signature of the Governor to a certificate of approval of the Departmental Assembly doubted, this court will reverse the decree of the court below confirming the claim, and remit it for further evidence and examination.

This was an appeal from the District Court of the United States for the northern district of California.

The history and nature of the case are stated in the opinion of the court.

It was argued by *Mr. Stanton* and *Mr. Gillet* for the United States, and *Mr. Hepburn* and *Mr. Brent* for the defendants in error.

The points and arguments which referred to many branches of the case, such as possession, &c., need not be stated. The following are the views which were taken of the alteration of the date of the grant.

*Mr. Gillet's* second point was this:

Where a party alters a written instrument with the intention of changing its character and effect, he destroys it, so that it can have no legal effect.

In the present case, the date of the original grant is shown to have been changed from the 12th of June to the 12th of February, 1846. The grants made as late as June of that year were the subject of question before the board and court. Those at an earlier date were not the subjects of so much suspicion. The grant itself states it was delivered to Padilla at the time when made. It is not shown to have been in other hands before it was filed in the cause. Either he or the claimants must have had it in their possession all the time. When produced, it had been altered. Padilla, or some one holding under him, must have made the alteration, and the alteration was material. This destroys its effect. The object of the alteration is apparent. Its materiality in Padilla's estimation cannot be questioned. He wished to make his grant date so far back as to be free from suspicion or question.

But, whether material or not, if the alteration was made by Padilla, or any one claiming under the grant, it is void. If altered by a stranger, if material, it vitiates the instrument.

It cannot be doubted that the alteration was made by Padilla, or some one claiming under the grant, as it went into his possession and remained with him and his grantees until filed before the land commissioners

The effect of alterations of deeds has been settled in the following cases:

In Henman *v.* Dickinson, (5 Bing., 183,) it was held, "Where a party sues on an instrument which on the face of it appears to have been altered, it is for him to show that the alteration has not been improperly made."

This the claimants did not attempt to show in the case at bar.

In Lewis *v.* Payn, (8 Cowen, 71,) it was held that "the alteration of a deed by one claiming a benefit under it, avoids it so far as respects any remedy upon it, and *semb*, this is so, whether the alteration be material, or a part wholly immaterial."

"The doctrine in Cro., Car., and Nels., Ab., seems to be sound, that where an estate cannot have existence but by deed, and the deed creating it is fraudulently destroyed by the party possessing the estate, the deed is void as to any remedy in favor of the fraudulent party, and the estate which he derived under it is gone."

In Jackson *v.* Molin, (15 Johns. R., 293, p. 297,) it was held, "If the obligee himself alters the deed, although it be in words *not material*, the deed is void."

In Prevost *v.* Gratz, (1 Pet. C. C. R., 364,) it was held, "An erasure in a deed, not shown to have been made before execution, is sufficient to avoid it upon a plea of *non est factum*. The presumption in such a case is, that the alteration was made after the execution of the deed."

In Jackson *v.* Osborn, (2 Wen., 555, p. 559,) it was held, that where there was an erasure or interlineation in a deed, the presumption was that it was made after execution, and it devolved upon the party claiming under it to explain, by evidence, if he insisted that it was made before execution.

The elementary writers all concur in the principles of the above cases.

It follows, that the grant in this case is void, and cannot lay the foundation of a recovery.

The counsel for the appellees replied to this argument as follows:

It is also objected that the date of the grant has been altered from June 12, 1846, to February 12, 1846.

The motive of this is not easy to understand. The Californians are a simple, ignorant people. The Supreme Court of the State told them their titles would not support an action, either for the possession or the property; the squatters, who knew Spanish, kindly interpreted the judgment of the court; it merely took the land from the Californians, and gave it to them, the squatters.

Is it strange, in such perplexity, that these simpletons should misbehave and play the fool ? Sometimes they have not presented their titles at all; sometimes, with two titles, they have only presented one; and repeatedly ranches have been finally confirmed to them, on which, in their despair, they themselves had taken up pre-emptions and made oath that the land was public, and uncovered by any private claim. This alteration has no doubt occurred in some such way; but whatever the mode, it is immaterial in law.

The rule on the subject of alterations is this: where an estate which may exist without deed (as a fee simple in land) is conveyed by deed, then the alteration, even although material and fraudulent, destroys the deed, but not the estate. There are many cases to this effect, but a very strong one is the case of Lewis *v.* Payn, 8 Cowan, 71.

Payn, the defendant, distrained for rent; Lewis, the plaintiff, replevied; the defendant avowed the taking, and justified under a lease, in which he, Payn, who had written the lease, had afterwards fraudulently inserted an additional covenant to his own advantage. A counterpart to this lease was also executed and put in evidence. On this case, the court, Savage, Ch. J., held: "That where an estate cannot have existence but by deed, and the deed creating the estate is fraudulently destroyed by the party possessing the estate, the deed is void as to any remedy in favor of the fraudulent party, and the estate which he derived under it is gone. But where an estate which may exist without deed (for instance, a fee simple in lands) is conveyed by deed, then the fraudulent alteration or cancelling of the deed destroys the deed, but not the estate. If the deed

be a quit-claim, the party loses nothing; if it contain covenants, he loses all right to an action on these; but the title is not divested. A rent charge can be created in no other manner than by deed, and the fraudulent alteration destroys both the deed and the estate.

"In this case, however, there are two leases, one for each party, both alike, and both are properly originals, as they are each executed by both parties; so that there was sufficient evidence to have authorized a recovery by the defendant without the production of the deed in his possession, unless his estate is gone in consequence of the alteration made by him in the copy of the lease, which was in his possession. Had there been but one lease, and had that been altered by Payn, as the copy in his possession was, all the estate which he takes by it would be forfeited and gone. The alteration avoids that deed, so far as he derives a benefit under it. But the estate is not destroyed, as there is still a valid deed in the possession of Lewis, which secures to him the possession of the estate granted." 75, 76.

Here two original grants were executed at the same time; one was delivered to the grantee, and one was retained by the Government. Both of these were put in evidence; and though one be void, the other is sufficient to show that the estate passed.

To like effect, see Jackson *v.* Gould, 7 Wend., 364. There the plaintiff offered, first, *a record of a deed*, under which he claimed in ejectment, and afterwards the deed itself, which appeared to have several erasures of the word *junior*. The court, citing with approbation the case of Lewis *v.* Payn, say: "The *destruction* of the deed would not have divested the estate, neither did the *erasure* of part of the lessor's name. The deed was good when executed, and conveyed to the grantee the title."

See also Hatch *v.* Hatch, 9 Mass., top pages 293, 297, 298, where a deed altered by the consent of the defendant, who claimed under it, was read in evidence, and made the basis of a successful defence in ejectment. Also, Doe *v.* Hirst, 3 Starkie's Rep., 60.

Hennick *v.* Malin, 22 Wend., 391, decides that no subsequent alteration of a deed by the grantee, in a material or immaterial point, will avoid the deed, where the controversy relates to a title to land, and the title once vested under the deed in the grantee. In other words, the title once vested will not revert by the alteration, cancellation, or destruction, of the muniment of title, whatever may be the law of defence against the recovery on a personal contract.

See, also, 3 Preston's Abstracts, 103.

2 H. Black's, 263.

Bul. N. P., 267.

Applying this principle to the facts of this case, it will be seen that the alteration of the month of the grant, from June to February, 1846, *must* have been made in the original grant after it was recorded by the Mexican authorities, because there is no such alteration in the copy certified from the surveyor general's office.

The original grant, then, has this manifest alteration. If done for a fraudulent purpose, it is clearly immaterial in point of law, and the fraud could easily be detected, by reference to the record of the grant, and the date of the petition and antecedent documents.

There is no evidence to show by whom or when the date *was* altered.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from the District Court of the United States for the northern district of California.

The appellees, who derived their title from Juan N. Padilla, the original grantee, presented their claim before the board of land commissioners in 1852, for five square leagues of land known by the name of *Bolsa de Tomales*, situate in the county of Sonoma, California. The board, after hearing the proofs, decreed in favor of the claim, which, on appeal to the district judge, was affirmed.

The documentary evidence of the title includes a petition to the Governor for the tract, dated at Monterey, May 14th, 1846. accompanied with a certificate of Manuel Castro, prefect, that

the land was vacant and grantable, dated same place, 10th same month; a marginal reference for information by the Governor, Pio Pico, dated Los Angeles, 20th May, 1846; a note of concession, dated same place, 12th June, 1846; and a formal title, dated same time and place, both signed by the Governor, and J. M. Moreno, Secretary *ad interim*.

Proof was given of the signatures of the Governor and Secretary, and that these papers were found among the Mexican archives, which had been transferred to the custody of the surveyor general of the United States for California.

The original grant of the formal title to the grantee was given in evidence by the claimants, dated Los Angeles, 12th February, 1846; also, a certificate of the Governor and Secretary, of the approval on the 12th June by the Departmental Assembly, dated 14th June, 1846.

Some attempt was made to prove possession and occupation by Padilla before and since the date of the grant, which were denied by the Government. The clear weight of the proof in the case is against any possession or occupation. The two witnesses in support of it, aside from Padilla, clearly confounded the possession of the ranch of Padilla, called the *Roblar de la Miseria*, with that of the *Bolsa de Tomales*, both of which are in the same section of country. Padilla states that he had possession of the land in 1844; built on it in that year; that he cultivated the land, and had cattle on it from that time until he sold it to Molena and Berreyesa, in the latter part of the year 1848, or beginning of the year 1849. In this he is expressly contradicted by some half a dozen witnesses, some of whom cannot be mistaken as to the facts. It appears, from the evidence, that Padilla, at the breaking out of the disturbances in the early part of 1846, adhered to the Mexican Government, and was charged with having been concerned in killing some Americans in the fore part of that year; was pursued by an American force, and fled from that part of the country, and did not return until after the war. (See also the testimony of Padilla in the case of the claim of Josefa de Haro and others, No. 101, before the board of commissioners; and see his grant of *Roblar de la Miseria*, 25th November, 1845.)

It is admitted that the original grant of the title in form, which was in the hands of the claimants, has been altered so as to bear date the 12th February, instead of the 12th June, 1846. No explanation was given of the alteration, though it was apparent on the face of the paper.

The genuineness of the signature of the Governor, Pio Pico, to the certificate of the approval of the Departmental Assembly, was doubted by the board of commissioners.

The board say, after alluding to the alteration of the date of the grant, "there are many things connected with the claim which, under the conclusion at which the commission has arrived, were not altogether satisfactory. The time when the grant was made, only a few days before the Americans took possession of the country, the evident and palpable attempt to alter the date so as to make it appear several months anterior to the time when it was issued, and the manifest want of similarity in the signatures of Pio Pico to the papers of approval, with the usual mode of signing his name, are circumstances which greatly detract from the good faith of the claim. The evidence, however, they say, makes out a prima facie case, which, in the absence of any rebutting testimony, entitles the petitioners to a decree of confirmation."

The court is of opinion that, in consideration of the doubtful character of the claim, and entire want of any merits upon the testimony, the decree of the court below should be reversed, and the case remitted for further evidence and examination.