# UNITED STATES *v.* RIO GRANDE DAM AND IRRIGATION COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 239.   Argued November 14, 15, 1901.—Decided March 3, 1902.

The motion made in the court below on behalf of the United States for a continuance of this cause and the application for a rehearing were addressed to the discretion of the trial court, and this court cannot reverse the decree below merely upon the ground that the trial court erred in its denial of those motions; but, as it is quite clear that the record does not contain evidence of a material character, and that the absence of such evidence is due to the action of the trial court in not giving sufficient time to the Government to prepare its case, this court cannot resist the conviction that if it proceeds to a final decree upon the present record great wrong may be done; and it reverses the decree below, without considering the merits, and remands the case with orders that leave should be granted to both sides to adduce further evidence.

THE case is stated in the opinion of the court.

*Mr. Marsden C. Burch* for the United States, appellants.

*Mr. J. H. McGowan* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit presents a contest between the United States and the appellee corporations as to the right asserted by the latter to construct over and near the Rio Grande a certain dam and reservoir for the purpose of appropriating the waters of that river in their private business.

By the seventh article of the treaty of February 2, 1848, between the United States and the Republic of Mexico it is provided that " the river Gila and the part of the Rio Bravo del Norte lying below the southern boundary of New Mexico, being, agreeably to the fifth article, divided in the middle between the two Republics, the navigation of the Gila and of the Bravo below said boundary shall be free and common to the vessels and citizens of both countries ; and neither shall, without the consent of the other, construct any work that may impede or interrupt, in whole or in part, the exercise of this right ; not even for the purpose of favoring new methods of navigation. . . . The stipulations contained in the present article shall not impair the territorial rights of either Republic within its established limits." 9 Stat. 928. And by the fourth article of the treaty of December 30, 1853, between the same countries, it was further provided that " the several provisions, stipulations and restrictions contained in the seventh article of the treaty of Guadalupe Hidalgo shall remain in force only so far as regards the Rio Bravo del Norte, below the initial of the said boundary provided in the first article of this treaty, that is to say, below the intersection of the 31° 47' 30" parallel of latitude, with the boundary line established by the late treaty dividing said river from its mouth upwards, according to the fifth article of the treaty of Guadalupe." 10 Stat. 1034. Again, by a convention between the United States and Mexico, concluded December 26, 1890, provision was made for an international boundary commission, empowered, upon application by the local authorities, to inquire whether any works were being constructed on the Rio Grande which were forbidden by treaty stipulations. 26 Stat. 1512.

Just before the last named convention, Congress, by the act

of September 19, 1890, c. 907, provided: "That the creation of any obstruction not affirmatively authorized by law, to the navigable capacity of any waters, in respect of which the United States has jurisdiction, is hereby prohibited. The continuance of any such obstruction, except bridges, piers, docks and wharves, and similar structures erected for business purposes, whether heretofore or hereafter created, shall constitute an offence, and each week's continuance of any such obstruction shall be deemed a separate offence. Every person and every corporation which shall be guilty of creating or continuing any such unlawful obstruction in this act mentioned, or who shall violate the provisions of the last four preceding sections of this act, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court, the creating or continuing of any unlawful obstruction in this act mentioned may be prevented and such obstruction may be caused to be removed by the injunction of any Circuit Court exercising jurisdiction in any district in which such obstruction may be threatened or may exist; and proper proceedings in equity to this end may be instituted under the direction of the Attorney General of the United States." 26 Stat. 426, 454, § 10.

These treaties with the above and other acts of Congress being in force, the present suit was brought, May 24, 1897, in the District Court for the Third Judicial District of New Mexico— the plaintiff being the United States of America,, and the original defendant being the Rio Grande Dam and Irrigation Company, a corporation of that Territory. By an amended bill, the Rio Grande Irrigation and Land Company—a British corporation doing business in the Territory of New Mexico—was also made defendant. The latter corporation, it is alleged, was organized as an adjunct and agent of the New Mexico corporation.

The bill and amended bill show that the object of the suit was to obtain a decree enjoining the defendants from commencing or attempting to construct or build a certain dam and reservoir

or any other dam, breakwater, reservoir or other structure, or obstruction of any character whatsoever, " across the Rio Grande or the waters thereof, or from maintaining such dam or obstruction in the Territory of New Mexico, and especially at Elephant Butte in said Territory, or any other point on said river in said Territory of New Mexico, as shall affect the navigable capacity of said Rio Grande at any point throughout its course, whether in the Territory of New Mexico or elsewhere."

The court of original jurisdiction said it was a fact of which it could take judicial notice, and it adjudged, that the Rio Grande was not navigable within the Territory of New Mexico, and it dissolved the injunction theretofore granted against the defendants, and dismissed the suit. Upon appeal to the Supreme Court of the Territory that decree was affirmed, August 24, 1890.

The case was then brought here by appeal. This court in its opinion rendered May 22, 1899, among other things said that to assert that Congress intended by its legislation " to confer upon any State the right to appropriate all the waters of the tributary streams which unite into a navigable watercourse, and so destroy the navigability of that watercourse in derogation of the interests of all the people of the United States, is a construction which cannot be tolerated. It ignores the spirit of the legislation and carries the statute to the verge of the letter and far beyond what under the circumstances of the case must be held to have been the intent of Congress." *United States* v. *Rio Grande Dam and Irrigation Company,* 174 U. S. 690, 708, 710.

Referring especially to the above act of September 19, 1890, the court also said: " It is urged that the true construction of this act limits its applicability to obstructions in the navigable portion of a navigable stream, and that as it appears that although the Rio Grande may be navigable for a certain distance above its mouth, it is not navigable in the Territory of New Mexico, this statute has no applicability. The language is general, and must be given full scope. It is not a prohibition of any obstruction to the navigation, but any obstruction to the navigable capacity, and anything, wherever done or however

done, within the limits of the jurisdiction of the United States, which tends to destroy the navigable capacity of one -of the navigable waters of the United States, is within the terms of that prohibition. Evidently Congress, perceiving that the time had come when the growing interests of commerce required that the navigable waters of the United States should be subjected to the direct control of the National Government, and that nothing should be done by any State tending to destroy that navigability without the explicit assent of the National Government, enacted the statute in question. And it would be to improperly ignore the scope of this language to limit it to the acts done within the very limits of navigation of a navigable stream. . . . The question always is one of fact, whether such appropriation substantially interferes with the navigable capacity within the limits where navigation is a recognized fact." 174 U. S. 690, 708.

The decree of the Supreme Court of the Territory was reversed by this court, and the cause was remanded " with instructions to set aside the decree of dismissal, and to order an inquiry into the question whether the intended acts of the defendants in the construction of a dam and in appropriating the waters of the Rio Grande will substantially diminish the navigability of that stream within the limits of present navigability, and if so, to enter a decree restraining those acts to the extent that they will so diminish."

The mandate of this court, based upon its final order of May 22, 1899, was issued June 24, 1899. On the 14th of July, 1899, the Supreme Court of the Territory remanded the cause to the court of original jurisdiction to be there proceeded with in accordance with our mandate.

On the 5th day of August, 1899, the District Court heard, at chambers, an application of the defendants, based on notice to the United States, to set the cause for final hearing upon evidence taken under the mandate of the Supreme Court of the Territory. That application was sustained, and the cause was set for final hearing on the 1st day of November, 1899.

Subsequently, October 17, 1899, the United States moved the court for a further continuance and extension of time for the

hearing of the cause, until February 5, 1900, or such other date as the court deemed reasonable and proper. The grounds upon which the motion was based were stated in writing, as follows: "That said plaintiffs have been and are unable to collect and present to this honorable court the necessary and proper evidence and oral testimony from witnesses for a proper presentation of the plaintiffs' side of said cause, notwithstanding having used due diligence to that end, all of which will more fully appear from an affidavit hereto attached and made a part of this motion in support thereof, and to which the court is respectfully referred. The plaintiffs, as a condition for the extension of time for the taking of testimony for the trial of said cause, have offered and hereby offer to enter into any proper and reasonable stipulation to enable the Supreme Court of the Territory of New Mexico to take jurisdiction of any appeal which may be taken by either party at its ensuing January term, and dispose of the cause during said term, or at any adjourned session of the same."

In support of its motion for continuance, the Government filed the affidavit of its attorney, Mr. Burch, who was specially charged with the duty of representing its interests in this litigation. That affidavit is too lengthy to be embodied in this opinion. It is sufficient to say that it fully supported the grounds of the motion made by the Government for further time.

The motion for a continuance was sustained only so far as to fix December 12, 1899, as the date for the final hearing of the cause. The hearing was commenced on the latter day, and continued from day to day until December 21, 1899, when the cause was taken under advisement. On the 2d day of January, 1900, a finding of facts was filed in the court. In the last paragraph of that finding it was stated " that the intended acts of the defendants in the construction of a dam or dams, or reservoirs, and in appropriating the waters of the Rio Grande, will not substantially diminish the navigability of that stream within the limits of the present navigability." The court ordered a decree to be prepared dismissing the bill.

On the 3d of January, 1900, the Government moved to set

aside the findings and grant a rehearing upon the ground of newly discovered evidence which could not by any reasonable diligence on its part have been discovered and procured for use on the hearing of the cause. The grounds of the motion were stated in writing and were abundantly sustained by the affidavits filed therewith.

The motion for rehearing was denied, and by a final order, entered January 9, 1900, the bill was dismissed. From that order the present appeal was prosecuted.

At the argument of the cause our attention was called to the action of the District Court in setting the cause for final hearing at a date so early as the first day of November, 1899; to the denial of the motion made on behalf of the United States on the 17th of October, 1899, to extend the time for final hearing to February 5, 1900; and to the order denying the motion, made after the facts were found but before final decree, for a rehearing. The making of the last order was specially assigned for error.

The inquiry which this court directed to be made, namely, whether the intended acts of the defendants in the construction of a dam and in appropriating the waters of the Rio Grande would substantially diminish the navigability of that stream within the limits of present navigability was not only of great importance, but was one that could not properly be made and concluded within the time ordinarily required for the preparation of an equity cause for final hearing. We think that the District Court, upon the showing made by the Government, might well have granted the motion to postpone the final hearing to a date later than that fixed. We make the same observations in reference to the motion for a rehearing in respect of the facts to be specially found, supported by affidavits as to newly discovered evidence, and made before the final decree was entered. The evidence set forth in those affidavits, if it had been brought before the court, would, we think, have materially strengthened the case of the United States.

But the motion for the continuance of the cause, and the application for a rehearing, were addressed to the discretion of the trial court; and it is well settled that matters of discretion

or practice cannot, generally speaking, be made the basis of an appeal, and do not constitute in themselves grounds for the reversal of a final decree. 2 Daniell's Chy. Pl. & Prac. 5th ed. *1462, and authorities cited in n. 1. *1463; *Cook* v. *Burnley*, 11 Wall. 659, 672; *Freeborn* v. *Smith*, 2 Wall. 160, 176; *Parsons* v. *Bedford*, 3 Pet. 433, 445; *Wiggins* v. *Gray*, 24 How. 303, 306; *Woods* v. *Young*, 4 Cranch, 237; *Sims* v. *Hundley*, 6 How. 1, 6; *Thompson* v. *Selden*, 20 How. 194, 198; *San Antonio* v. *Mehaffy*, 96 U. S. 312, 315; *Terre Haute & Indiana Railway Co.* v. *Shuble*, 109 U. S. 381, 384. We cannot therefore reverse the decree merely upon the ground that the trial court erred in its denial of the motions to which we have referred.

But there are other considerations which may be properly made the basis for the reversal of the decree to the end that injustice may not be done. As upon this appeal in equity the whole case is before us, we can render such decree as under all the circumstances may be proper. *Ridings* v. *Johnson*, 128 U. S. 212, 218. If it appears that injustice may be done by proceeding to a final decree upon the record as it is presented to us, we have the power to forbear a determination of the merits and remand the cause for further preparation.

In *Estho* v. *Lear*, 7 Pet. 130–1, involving the validity of a certain paper purporting to be and which had been recorded as the last will and testament of Kosciuszko, the bill charged that the paper was not a will. The bill made no reference to any other will. The answer insisted that the will referred to in the bill was a valid instrument and operative. Chief Justice Marshall, speaking for the court, said: "Before the court can decide the intricate questions which grow out of this will, we think it necessary to possess some information which the record does not give." It appearing that the testator had made another will, which was not in the record, the court said that "since we are informed of its existence, it would be desirable to see it. We do not think the case properly prepared for decision; and therefore direct that the decree be reversed and the cause remanded, with liberty to the plaintiff to amend his bill." In *United States* v. *Galbraith*, 22 How. 89, 96, the question was as

to the validity of a claim for five leagues of land.  The Board of Land Commissioners decided against the United States, upon the ground that there was an absence of any rebutting testimony that would overcome the *prima facie* case made by the claimant.  Speaking by Mr. Justice Nelson, this court said that it was "of opinion that, in consideration of the doubtful character of the claim, and entire want of any merits upon the testimony, the decree of the court below should be reversed, and the case remitted for further evidence and examination."  In *Illinois Central Railroad* v. *Illinois,* 146 U. S. 387, one of the questions arising in the pleadings was whether the Illinois Central Railroad Company was entitled to maintain certain docks, piers and wharves on the lake front at Chicago.  The Circuit Court decided that question in favor of the railroad company. But this court was of opinion that the evidence in the record was not adequate for the determination of that question, and upon its own motion reversed the decree and remanded the cause with directions for further investigation, as to enable the court to determine whether the structures in question extended into the lake beyond the point of practical navigability, having reference to the manner in which commerce was conducted on the lake.

In the present case it is quite clear that the record does not contain evidence of a material character, and that the absence of such evidence is due to the action of the trial court in not giving sufficient time to the Government to prepare its case. We cannot resist the conviction that if we proceed to a final decree upon the present record, great wrong may be done to the United States, as well as to all interested in preserving the navigability of the Rio Grande.  As the record does not show that the representatives of the Government were chargeable with want of diligence in their preparation of the cause, we think that the decree should be reversed and the cause remanded, with liberty to both parties to take further evidence.

We are the better satisfied with this disposition of the case because the questions presented may involve rights secured by treaties concluded between this country and the Republic of Mexico.  As the latter country cannot be indifferent to the re-

sult of this litigation and is not a party to the record the court ought not to determine the important question before us in the absence of material evidence, which we are not at liberty upon this record to doubt would be in the record but for the somewhat precipitate action of the trial court.

Without considering the merits

*The decree must be reversed, and the cause remanded to the Supreme Court of New Mexico with directions to reverse the decree of the District Court and to remand the case with direction to grant leave to both sides to adduce further evidence. It is so ordered.*

MR. JUSTICE GRAY and MR. JUSTICE MCKENNA did not sit in this case nor participate in its decision.

MR. JUSTICE BREWER and MR. JUSTICE SHIRAS dissented.