## BENZ et al. v. CELESTE FUR DYEING & DRESSING CORPORATION et al.

No. 260.

Circuit Court of Appeals, Second Circuit.

June 24, 1943.

846

Leonard Loewinthan, of New York City (Mock & Blum, of New York City, of counsel), for plaintiffs-appellees.

Bergner & Bergner and Daniel L. Morris, all of New York City, (Daniel L. Morris, David Bergner, and Alexander Mencher, all of New York City, of counsel), for defendants-appellants.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The process which plaintiffs contend the defendants are infringing involves the use of formaldehyde and an acid catalyst, but not the use of cresol. The claims in suit do not, by their terms, call

for the use of cresol. But defendants assert that those claims, if read so as not to make the use of cresol mandatory, are invalid. This argument requires recourse to the file-wrapper. Plaintiffs insist that the file-wrapper was not before the trial court and cannot be considered by us. However, because of the stipulation as to the contents of the record here, it is proper, under F. R. C. P. 43(c), for us to consider it for the purpose of ascertaining whether or not it should have been admitted in evidence. Clearly it should have been. Accordingly, we have examined it in order to determine whether, had it been admitted in evidence, the trial judge should have directed a verdict for defendants.

Examining the file-wrapper and the testimony, we discover the following: In the application as originally filed there were broad claims not calling for the use of cresol; but those claims were rejected as invalid by the Patent Office as reading on the prior art. The claims in suit were subsequently inserted by amendment. Calva testified that, at the time of filing the original application in 1936, in carrying out experiments and in himself working his process, when he used formaldehyde and an acid catalyst he also used cresol.[1] Subsequently—at some undisclosed date but before February 24, 1941—he discovered that the use of cresol was not necessary.[2] The testimony does not show when he made this discovery. There is, however, evidence which sheds some light on the subject. Testimony introduced by the plaintiffs shows that "late in 1937 or early in 1938" there was a remarkably successful public commercial use of the process which defendants are said to infringe. But that public use was by Laskin & Co., a stranger to Calva and the plaintiffs, and it is not without significance that the first effort made by Calva importantly to amend his claims occurred on December 7, 1937; moreover, at that same time, Calva changed the reference in the specification to cresol, as "most important" of the ingredients described in his Example I, to "useful." It is therefore a possible inference that Laskin's public use first led Calva to discover that he could dispense with the use of cresol. Moreover, the file-wrapper indicates that the claims equivalent to the claims in suit came into the application by way of amendments as a result of interference proceedings and not earlier than January 19, 1939.

Plaintiffs try to procure for their own benefit this public use by Laskin. They point to Calva's testimony to the effect that Laskin was in interference with Calva and that, in the Patent Office, Calva was successful in those interference proceedings. Plaintiffs then argue that Laskin must be deemed to have learned of the process, thus publicly used, from Calva through the interference proceedings. But that argument does not stand up for the following reasons: The record of the interference proceeding was not put in evidence and no testimony was given as to its details. Calva merely stated that they related to "two claims"; he did not identify those claims except to say that they did not call for the use of cresol; he did not give the date of the interference proceedings. There is uncontradicted testimony that, while the decision was in favor of Calva, the matter is "still on appeal"; and there is also uncontradicted testimony that no suit has been begun against Laskin for infringement of plaintiffs' patent.

It is true that cases, cited by plaintiffs, hold that, if an applicant, while his application is pending, discovers new uses to which his invention can be put, he may properly amend to omit a non-essential in the process originally disclosed by him, provided that he shows that the amendments involved "something that might be fully deduced from the original application", and that they do not broaden the patent to "interfere with other inventors who have entered the field in the meantime" or "appropriate that which has, in the meantime, gone into public use."[3] There is

---

[1] "Q. Up to the time you filed your application on which the patent was issued, when you used formaldehyde and acid catalyst you also used cresol along with it? A. Yes, I did."

[2] There was much testimony concerning Example I of the specification. The mixture in that Example includes cresol. The testimony shows that originally the specification stated that cresol was "most important," in Example I, and that, in December 1937, by amendment, "useful" was substituted for "most important." Calva testified that "when I drew the specification I might have thought that it was first very important, then I found it was useful, and now I find it is not useful, it is not necessary."

[3] Hobbs v. Beach, 180 U.S. 383, 394, 397, 21 S.Ct. 409, 414, 45 L.Ed. 586, distinguishing Railway Co. v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053; see, also,

doubt on the evidence in this record, whether Calva comes within the doctrine of those cases.

Cases like Crown Cork & Seal Co. v. Ferdinand Gutmann & Co., 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265, and Writer v. Kiwad, 63 F.2d 259, 20 C. C. P. A., Patents, 869, relating to abandonment of matters shown to have been originally disclosed, are not in point where there was not originally a sufficient disclosure.

■ Plaintiffs point to a stipulation made by the parties, long before the trial, that the divisional application on which the patent was issued in 1941 "was a true division of" the "parent application * * * which was filed * * * on October 1, 1936, and that * * * Calva is entitled to antedate said parent application to the year 1934, by reason of said Calva's conception and reduction to practice of the subject matter of such parent application in * * * 1934." As defendants did not, before or at the trial, ask to be relieved of that stipulation, it is doubtful whether we may disregard it.[4] But the terse reference in the stipulation to the divisional application as "a true division" cannot serve to dispense with the proof needed to bring plaintiffs within the doctrine of the cases they cite. The stipulation means, at most, that the claims in the application as they stood at the time when the divisional application was filed were such that it was necessary or proper to divide them;[5] but those brief words in the stipulation do not mean that, without regard to the contents of the file-wrapper, plaintiffs can assert that they are entitled to have the claims construed so as not to call for the use of cresol, no matter how broadly the claims were amended between the time of the filing of the parent application and the time of the filing of the divisional application.[6]

■ Much can, then, be said for the position that Calva was not entitled to the broad claims eliminating the use of cresol and that the trial judge should have directed a verdict for defendants. The plaintiffs, however, contend that the issue as to whether the original claims were sufficiently broad and as to whether there was public use by others intervening before the claims were amended was not raised by defendants' pleadings in the court below. Muncie Gear Works v. Outboard, Marine & Mfg. Co., 315 U.S. 759, 766, 768, 62 S.Ct. 865, 86 L.Ed. 1171, indicates that such a contention would not be cogent were the facts relating to that issue fully presented in the record. Unfortunately, that is not the condition of the record here, and that condition may be due to the fact that plaintiffs were not adequately warned by the defendants' pleadings. To be sure, plaintiffs seemingly recognized the embarrassment created for their case by the evidence which they themselves introduced as to Laskin's public use, for they endeavored, although not successfully, to relieve themselves of that embarrassment by Calva's testimony with reference to the interference proceedings to which Laskin was a party. All things considered, however, it seems unjust for us to decide the case adversely to plaintiffs on so unsatisfactory a record—one which, while it makes the case considerably doubtful as to the right of plaintiffs to the broad claims eliminating the use of cresol, does not sufficiently illuminate that subject. We shall, therefore, remand for a new trial "to the end that injustice may not be done."[7]

---

Novadel Process Corp. v. J. P. Meyer & Co., 2 Cir., 35 F.2d 697, 701–703; Michigan Carton Co. v. Sutherland Paper Co., 6 Cir., 29 F.2d 179, 184; Cleveland Foundry Co. v. Detroit Vapor Stove Co., 6 Cir., 131 F. 853, 857.

4 Cf. Carnegie Steel Co., Ltd., v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968; but cf. Swift & Co. v. Hocking Valley R. Co., 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722.

5 Cf. In re Ferenci, 83 F.2d 279, 23 C.C.P.A., Patents, 1023; In re Land, 109 F.2d 251, 253, 27 C.C.P.A., Patents, 869.

6 This too is to be noted: Calva's testimony shows that he had not reduced to practice, as far back as 1934, the process without the use of cresol. Accordingly the stipulation, which concedes that Calva is entitled to antedate the parent application to the year 1934 because of reduction to practice of the subject matter of that parent application in that year, supports the conclusion that the parties to the stipulation did not intend, merely by speaking of "a true division," to eliminate the necessity of proof that the claims in suit, resulting from amendments so far as they dispensed with the use of cresol, derived from the claims in the parent application.

7 Cf. United States v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 423, 424, 22 S.Ct. 428, 46 L.Ed. 619; Estho v. Lear, 7 Pet. 130, 8 L.Ed. 632; Arm-

At the new trial, the character of all the interference proceedings and the relations between plaintiffs and Laskin should be made clear; also in the light of the fact that plaintiffs, in their brief, suggest that the file-wrapper now in the record is not complete, there should be assurance that the full file-wrapper is in evidence.

Reversed and remanded for new trial.

SWAN, Circuit Judge (concurring specially).

One of the errors assigned by the appellants is the exclusion from evidence of Calva's parent application. My brothers believe that it should have been admitted. Were reversal confined to this point I should be content to remain silent. In so far as the opinion expresses broader views I am not able to concur in it.

strong v. Lear, 8 Pet. 52, 74, 8 L.Ed. 863; Security Mortgage Co. v. Powers, 278 U.S. 149, 159, 160, 49 S.Ct. 84, 73 L.Ed. 236; Pfeil v. Jamison, 3 Cir., 245 F. 119; Finefrock v. Kenova Mine Car Co., 4 Cir., 22 F.2d 627, 634; Wyant v. Caldwell, 4 Cir., 67 F.2d 374; Columbia Gas & Fuel Co. v. City of Columbus, 6 Cir., 55 F.2d 56, 58.