**PORTER, Price Administrator, v.
LEVENTHAL.**

No. 61, Docket 20323.

Circuit Court of Appeals, Second Circuit.

Dec. 31, 1946.

¹ 50 U.S.C.A.Appendix, § 925 (a) and (e) read as follows:

"(a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act [section 904 of this Appendix], he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond. * * *

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accomodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Ad-

ministrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered."

Section 2 of the General Maximum Price Regulation (issued pursuant to the statute) reads as follows:

"Except as otherwise provided in this regulation, the seller's maximum price for any commodity or service shall be '(à) The highest price charged by the seller during March 1942: (1) For the same commodity or service; or (2) If no charge was made for the same commodity or service, fior the similar commodity or service most nearly like it; or (b) If the seller's maximum price cannot be determined under paragraph (a) the highest price charged during March 1942 by the "most closely competitive seller of the same class"; (1) For the same commodity or service; or (2) If no charge was made for the same commodity or service, for the similar commodity or service most nearly like it.'

"For the purposes of this General Maximum Price Regulation, the highest price charged by a seller during March 1942 shall be: (a) The highest Price which the seller charged for a commodity 'delivered' * * * by him during March 1942 to a 'purchaser of the same class'; or (c) If the seller made no such delivery * * * the highest Price charged by the seller during March 1942 to a purchaser of a different class adjusted to reflect the seller's customary differential between the two classes of purchasers * * *

"One commodity shall be deemed similar to another commodity, if the first has the same use as the second, affords the purchaser fairly equivalent serviceability and belongs to a type which would ordinarily be sold in the same price line. In determining the similarity of such commodities, differences merely in style or design which do not substantially affect use, or serviceability, or the price line in which such commodities would ordinarily have been sold, shall not be taken into account. * * *

"Section 20(g) of the regulation de-

fines 'most closely competitive seller of the same class' as follows: 'Seller of the same class' means a seller (1) performing the same function (for example, manufacturing, distributing, retailing, processing, storing, installing, or repairing), (2) of similar type (for example, department store, mail order house, chain store, specialty shop, cut-rate store), (3) dealing in the same type of commodities or services and (4) selling to the same class of purchaser. A seller's 'most closely competitive seller of the same class' shall be a seller of the same class who (I) is selling the same or a similar commodity or service, and (II) is closely competitive in the sale of such commodities or services, and (III) is located nearest to the seller.

"The term 'purchaser of the same class' is defined as follows in Section 20(k) of the regulation: 'Purchaser of the same class' refers to the practice adopted by the seller in setting different prices for commodities or services for sales to different purchasers or kinds of purchasers (for example, manufacturer, wholesaler, jobber, retailer, government agency, public institution, individual consumer) or for purchasers located in different areas or for different quantities or grades or under different conditions of sale."

Sections 11 and 12 of the Regulation reads as follows:

"Sec. 11. Base-period records. Every person selling commodities or services for which, upon sale by that person, maximum prices are established by this Regulation, shall: (a) Preserve for examination by the Office of Price Administration all his existing records relating to the prices which he charged for such of those commodities or services as he delivered or supplied during March 1942, and his offering prices for delivery or supply of such commodities or services during such month; and (b) Prepare, on or before July 1, 1942, on the basis of all available information and records, and thereafter keep for examination by any person during ordinary business hours, a statement showing: (1) The highest prices which he charged for such of those commodities or services as he delivered or supplied during March 1942 and his offering prices for delivery or supply of such commodities or services during such month, together with an ap-

propriate description or identification of each such commodity or service; and (2) all his customary allowances, discounts, and other price differentials. Any person other than a person selling at retail, who claims that substantial injury would result to him from making such statement available to any other person, may file it with the appropriate field office of the Office of Price Administration. The information contained in such statement will not be published or disclosed unless it is determined that the withholding of such information is contrary to the purposes of this Regulation.

"Sec. 12. Current records. Every person selling commodities or services for which, upon sale by that person, maximum prices are established by this Regulation shall keep, and make available for examination by the Office of Price Administration, records of the same kind as he has customarily kept, relating to the prices which he charged for such of those commodities or services as he sold after the effective date of this General Maximum Price Regulation; and, in addition, records showing, as precisely as possible, the basis upon which he determined maximum prices for those commodities or services."

56

In his opinion, the judge said in part as. follows:

"The items here involved were manufactured by the Regens Lighter Corporation in Long Island City, and plaintiff called Rudolf Dismas, vice-president of that organization, as a witness. According to him, the prices at which his corporation sold lighters. after March 1942, as of which time prices. generally were frozen, were $5.40 per dozen to jobbers; $7.20 to retailers, and the latter were supposed to supply the users of the items at $1 a piece. The manufacturer advertised its wares in the October issues of two local trade publications, known as 'The Tobacco Jobber' and 'The Retail Tobacconist,' respectively and specifically declared, that the retail price of the lighter was unchanged at $1. each. Letters and price-sheets to the same effect, and of earlier dates, were widely distributed throughout the trade. The corporation endeavored to sell its products only to merchants who maintained its price list. Subsequent to. March 1942, the company had but two domestic competitors, and each of them sold its lighters at prices less than those charged. by the Regens Company. Dismas, however,. stated that he could not, in all instances,.

quote jobber's prices for lighters after March 1942, because of the existence of a black market in the trade.

"Section 1499.2 of the General Maximum Price Regulation sets the maximum price of an article offered for sale at 'the highest price charged by the seller during March 1942, for the same commodity' or 'for the similar commodity most nearly like it' or at the highest price charged during March, 1942 by the 'most closely competitive seller of the same class for the same commodity.' The testimony of Dismas was offered by plaintiff in order to prove the ceiling prices on Regens Lighters that had been established by defendant's 'most closely competitive seller,' which price, in the absence of a price established by defendant in March, 1942, would tend to place a limitation on the amount he might charge for the same item. While there is no direct showing that defendant saw or knew of any of the advertising matter issued by Regens Lighter Corporation, it is reasonable to suppose that defendant, as an experienced trader, when he undertook to deal in Regens Lighters, would inform himself of what the company charged for the merchandise he was handling. For him to have done so would seem to be a natural course of procedure in the business in which he was engaged. He, the same as every trader, was charged with knowledge of the price regulations of the Administrator, and it became his duty to inform himself of the restrictions applicable to his line of business. For this reason, it is fair to assume that he either knew or should have known that the ceiling prices of Regens Lighter Corporation were also prices by which he might be bound. If I am correct in this, Leventhal must bear the burden of showing that his established ceiling price in March 1942 (if he had one) differed from that of the manufacturer of the Regens Lighter."

George Moncharsh, David London, Albert M. Dreyer, and Walter D. Murphy, all of Washington, D. C. (Kenneth V. Fisher, of New York City, of counsel), for plaintiff-appellee.

Hays, St. John, Abramson & Schulman of New York City (Shad Polier, of New York City, of counsel), for defendant-appellant.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ The issue here is this: Did defendant in 1943 sell at prices above the March 1942 prices of his "most closely competitive seller of the same class?" On that issue the plaintiff had the burden of proof. Therefore, plaintiff, in order to win, had to show facts which directly proved, or from which it could reasonably be inferred, that defendant's "most closely competitive seller" sold Regens-made lighters during March 1942 at prices below the prices at which defendant sold in 1943 (i.e., between $2.75 and $3.75 each). This plaintiff sought to do by proof that Regens, the sole manufacturer of such lighters, sold them during March 1942 to both jobbers and retailers, and that Regens' price to jobbers was then 45¢ a piece, and to retailers was then 60¢.

■ But from those facts alone it cannot reasonably be inferred that Regens' prices were those of defendant's "most closely competitive seller." As there was undisputed evidence that during March 1942 Regens was not the only jobber, it was necessary, in order to justify such an inference, also to show, as of that date, either (a) that Regens was the principal jobber; or (b) that Regens was, for other reasons, the "most closely competitive seller"; or (c) that someone who occupied that status, or the jobbers selling most of such lighters, then sold below the price-range at which defendant later sold in 1943. The evidence does not establish, directly or indirectly, that Regens was the principal jobber; and, for all we know from the evidence, the great bulk of Regens-made lighters was sold during March 1942 by jobbers other than Regens at prices equal to, or above, those at which defendant sold in 1943. Proof that one jobber, Regens, sold at certain prices in March 1942 does not suffice to make out a prima facie case that that jobber was defendant's "most closely competitive seller," or that whatever jobber occupied that position sold at those prices.

■ Plaintiff suggests in effect that it is reasonable to infer that other jobbers did not sell above Regens' price as jobber because competition would necessarily keep the prices down to Regens' prices. That argument would be sound, (1) if Regens' supply had been plentiful during March 1942, and (2) if 'most retailers had known of Regens' price. But the evidence is that, because of the restrictions imposed by the War Production Board, Regens' supply was not then plentiful. There is no evidence from which it may properly be inferred that Regens was then supplying most of the retailers or from which it can be ascertained to what extent the demand was being met by other jobbers who had previously acquired Regens-made lighters from Regens or from Regens' jobber-customers. Moreover, we find it impossible to believe, absent proof thereof, that the numerous scattered small retailers dealing in such a commodity then knew of Regens' prices; and there is no such proof. In addition, there is evidence that Regens-made lighters were then sold at retail at prices ranging from $2.75 to $5. each.

■ Plaintiff points to the evidence that Regens, as sole manufacturer, was the original source of supply, and that Regens, in making its sales to other jobbers, endeavored to have them resell to retailers at not above $7.20 a dozen, and also to have them arrange with retailers that the retail price was to be maintained at approximately $1.00 a piece. But from those facts one cannot reasonably infer that in March 1942 such other jobbers—and therefore defendant's "most closely competitive seller"— sold at a range less than $2.75 to $3.75 each. For anyone who bought from Regens was free to sell at any price he chose to jobbers or retailers, since Regens imposed no contractual obligations as to resale prices, and the record contains no evidence that its efforts to maintain prices were successful.[3]

Plaintiff asserts that data showing the prices in March 1942 of the defendant's "most closely competitive seller" were peculiarly accessible to defendant. Whether that is true may perhaps be doubted, considering plaintiff's statutory powers to obtain evidence from all sellers. But assuming arguendo that the data were peculiarly available to defendant, we still could not agree that defendant had either the burden of proof or of "going forward." Nor do we regard as apposite cases cited by plaintiff such as Anderson v. Mt. Clemens Pottery Co., 66 S.Ct. 1187. In such cases, the plaintiff proved that defendant had violated a legal duty owed to the plaintiff, but, because of the nature of defendant's wrong, the plaintiff was unable to show the amount of the resultant damages; the "fact" that damages occurred was certain, but uncertainty existed as to their amount; in those circumstances, the amount of the damages may be estimated "Upon probable and inferential as well as direct and positive proof."[4] In the instant case we do not reach the question of the amount of damages, since the plaintiff did not show that the defendant had done the wrong of which plaintiff complains, i.e., charged prices in violation of the regulation.

■■ That defendant violated the regulations in not preparing the required "base period statement" is not here material. For that violation the statutory remedy was an injunction; such an injunction issued. That defendant used an improper method in determining its prices is not proof that its prices were excessive. Injunction constitutes the remedy against wrong pricing-methods; an action for damages, like that here, for excessive prices. Even if defendant had thrown dice to arrive at its prices,

3 Regens' letter of February 2, 1942, sent to certain jobbers, merely expressed a hope or wish.

Regens' advertisement published in October 1943, which expressed a similar desire, is, of course, not relevant as to prices in March 1942.

4 Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 251, 75 L.Ed. 544; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 377–379, 47 S.Ct. 400, 71 L.Ed. 684; Bigelow v. R. K. O. Pictures, Inc., 327 U.S. 251, 264–266, 66 S. Ct. 574; Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972, 979; President & Directors of Manhattan Co. v. Kelby, 2 Cir., 147 F.2d 465, 476; Phelan v. Middle States Oil Corp., 2 Cir., 154 F.2d 978, 997; Upson v. Otis, 2 Cir., 155 F.2d 606, 611.

they might nevertheless have been no higher than those of the most closely competitive seller. To prove that they were higher was plaintiff's burden, and that burden it did not discharge.[5]

We conclude that, on the evidence, judgment should not have been entered against defendant. However, "in order that injustice may not be done," we reverse and remand so that plaintiff, if he so desires, may try to offer further proof.[6] Since, as a consequence of such further proof, the judge may find that defendant overcharged, we think it desirable to make this comment concerning the assessment of treble damages: Assuming, arguendo, that we have any authority to review as to such an issue, we think that, had there been proof of overcharges by defendant, the judge would not have abused his discretion in assessing treble damages, in the light of defendant's method of arriving at his prices.

Reversed and remanded.

---

[5] Plaintiff includes in his brief an undated memo from the Assistant General Counsel of the OPA directed to all OPA regional and district offices; this memo interprets the regulation. Plaintiff asserts that the courts must give it controlling weight. Since it is an inter-office memo not made available to the general public, and since there is nothing to show that it was approved by the General Counsel (let alone the Administrator), we think it of no importance, and therefore do not consider it.

[6] Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221; Estho v. Lear, 7 Pet. 130, 8 L.Ed. 632; Armstrong v. Lear, 8 Pet. 52, 74, 8 L.Ed. 863; United States v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 423, 424, 22 S.Ct. 428, 46 L.

Ed. 619; Security Mortgage Co. v. Powers, 278 U.S. 149, 159, 49 S.Ct. 84, **73** L.Ed. 236; Benz v. Celeste Fur Dyeing & Dressing Corp., 2 Cir., 136 F.2d 845, 848; Nachman Spring-Filled Corp. v. Kay Mfg. Co., 2 Cir., 139 F.2d 781, 787; Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, 904; Phelan v. Middle States Oil Corp., 2 Cir., 154 F.2d 978, 1000; Pfeil v. Jamison, 3 Cir., 245 F. 119; Wyant v. Caldwell, 4 Cir., 67 F.2d 374; Columbus Gas & Fuel Co. v. City of Columbus, 6 Cir., 55 F.2d 56, 58.