COPPER RIVER MIN. CO. v. McCLELLAN et al.

(Circuit Court of Appeals, Ninth Circuit. May 15, 1905.)

No. 1,091.

1. APPEAL—PROCEDURE—FILING PETITION AND ASSIGNMENT OF ERRORS.

Rule 11 of the Circuit Court of Appeals (31 C. C. A. cxlvi, 90 Fed. cxlvi), which requires a plaintiff in error or appellant to file with the court below his petition and assignment of errors, and provides that no writ of error or appeal shall be allowed until such assignment of errors shall have been filed, is sufficiently complied with when the order allowing an appeal and the petition and assignment of errors are filed in the court.

below at the same time, the order of allowance being considered as taking effect on that date.

2. SAME—APPEALS FROM DISTRICT COURT OF ALASKA—ALLOWANCE BY CIRCUIT JUDGE.

A member of the Circuit Court of Appeals for the Ninth Circuit has power to allow an appeal from the District Court of Alaska, under the general rules governing such procedure, which are made applicable by the Code of Alaska, there being no provision of such Code inconsistent with such allowance.

3. SAME—GROUNDS FOR DISMISSAL—SUBSEQUENT JUDGMENTS ON SAME ISSUES.

The fact that, after entering a decree on the merits dismissing a bill, other suits in the same court, brought by the same complainant against some of the same defendants, and involving the same matters, were dismissed by the court on the ground that the issues had been determined in the prior suit, from which decrees no appeal was taken, does not prevent a review of the first decree on the merits by the appellate court.

4. SAME—MATTERS REVIEWABLE—RULING ON MOTION FOR CONTINUANCE.

A motion for continuance is addressed to the sound discretion of the court, and its action thereon is not reviewable unless there has been an abuse of discretion.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, § 3837.]

5. CONTINUANCE—DENIAL OF MOTION—DISCRETION OF COURT.

The denial of a motion for continuance on the ground of absence of counsel and witnesses was not an abuse of discretion, where no satisfactory showing of diligence was made.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Continuance, §§ 51, 74–93.]

6. REFERENCE BY CONSENT—COMPELLING ELECTION—DURESS.

Where a motion for continuance made by complainant was overruled for insufficiency, it was not error for the court to give complainant its election to proceed to trial or consent to a reference, and a consent to a reference so given cannot be said to have been made under duress.

7. SAME—FORM OF TAKING TESTIMONY.

Under the Code of Alaska, an order of reference need not require that the witnesses who testify before the referee shall read over and subscribe their testimony.

8. SAME—WAIVER OF OBJECTION.

An objection to the form in which testimony is taken before a referee or commissioner is waived unless the testimony is objected to when offered in evidence.

9. SAME—EXTENSION OF TIME—TIME FOR MAKING APPLICATION.

If an order of reference to take the testimony in a cause does not give a party sufficient time, he should apply for an extension before the time given has expired; and where no such application is made it is not error for the court to refuse to receive further testimony offered on the hearing.

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Third Division of the District of Alaska.

The Chittyna Exploration Company, a corporation, the predecessor in interest of the appellant, the Copper River Mining Company, brought a suit against the appellees to declare a trust, and to enforce a conveyance of certain mining claims, and to obtain an injunction and the appointment of a receiver. The property in controversy is situated about 180 miles from Valdex, Alaska, and consists of 12 mining claims, known as the "Bonanza Mines," located between July 4 and August 26, 1900, and all recorded on October 5, 1900. The complaint, in substance, alleged that the appellees Warner, E. A. Gates, Kain, Smith, McClellan, Fitch, Amy, Sweeney, Hamlin,

H. T. Gates, Abercrombie, Birch, and Millard were partners under the name of the McClellan Prospecting Party; that the Chittyna Exploration Company purchased from McClellan, Millard, Fitch, Warner, H. T. Gates, and E. A. Gates the Nicolai mines, the consideration being 300 shares of the capital stock of that corporation; that B. F. Millard and G. M. Perine, acting for the Chittyna Exploration Company, made an agreement with McClellan, whereby the latter was to superintend work for said corporation in the year 1900, and prospect and locate claims and engage men to prospect and locate claims for it, for the sum of $125 per month, and the corporation agreed to purchase from McClellan supplies, tools, etc., belonging to him for $354.76, and five horses for the sum of $200 each; that this contract was ratified by a meeting of the board of directors of said corporation on March 23, 1900; that McClellan entered into the performance of the contract, hired men, procured provisions, tools, etc., and the said corporation paid for provisions and horses procured by him $14,074.77, and for assessment work and for exploring and prospecting and recording certificates of location in all $14,429.53; that during the year 1900 McClellan hired Warner, Kain, Smith, E. A. Gates, informed them of his agreement with said corporation, and they, in consideration of their wages, engaged to prospect and locate mines in Alaska on its behalf; that McClellan provided the men with tools, supplies, stores, etc., belonging to said corporation, and they did prospect and explore for said corporation, and while in its employment they discovered the 12 mines in question; that the locations thereon were made by the locators with and by means of money, tools, supplies, etc., furnished by the said corporation, and for its use and benefit; that George M. Perine and Clinton L. Walker were at the mines, and McClellan admitted to them that the mines belonged to the said corporation, and were located for its use and benefit; that McClellan, Kain, Smith, E. A. Gates, and Warner conspired with Fitch, Amy, Sweeney, Hamlin, and H. T. Gates to cheat and defraud the said corporation out of said mines; that all of said parties are copartners under the name of the McClellan Prospecting Party; that they conveyed to W. R. Abercrombie an undivided one-eleventh of said mine; that said Abercrombie had knowledge of the facts above alleged; that McClellan transferred one-half of his interest to B. F. Millard, and that said Millard had full knowledge of said facts above alleged; that prior to January, 1901, Kain sold and assigned to Stephen Birch three-tenths of his interest, and J. E. Hamlin about the same time sold and assigned to Birch all or a portion of his pretended interest, but prior thereto Birch had full knowledge of all the foregoing facts; that in the latter part of 1901 or the first part of 1902 McClellan, Fitch, Kain, Smith, E. A. Gates, Amy, Sweeney, Warner, Hamlin, H. T. Gates, and Birch agreed to sell to William De L. Benedict their pretended undivided ten-elevenths for the sum of $1,000,000; that Benedict had full knowledge of all the facts above alleged; that Benedict made a pretended sale or assignment to the Alaska Copper Company, and the latter took with full knowledge of the facts above alleged; that McClellan, Fitch, Kain, Smith, E. A. Gates, Amy, Sweeney, Warner, Hamlin, H. T. Gates, and Birch gave deeds in escrow of the said mines, and also executed an assignment of their pretended interest; that in March, 1902, the said corporation sent two men to Alaska to take possession of the Bonanza mines, but they were prevented from going on the property by threats; that the appellees are extracting valuable ore from the said mines; that all the appellees have actual and constructive knowledge, and have conspired to cheat and defraud the said corporation; that said mines are worth $2,000,000, and that the Alaska Copper Company is now working the same. The complaint was filed on August 11, 1902. On October 8, 1902, the appellees Fitch, Smith, E. A. Gates, Amy, Kain, Sweeney, Warner, Birch, the Alaska Copper Company, and the McClellan Prospecting Company filed their answer to the bill. On January 30, 1903, the appellees McClellan, H. T. Gates, and Benedict filed their answer. The two answers are identical, except that certain matters in the first answer, which were denied on information and belief, were in the second answer denied by McClellan upon his own knowledge. The answers denied that Abercrombie and Millard were ever members of the McClellan Prospecting Party. They alleged that Warner, E. A. Gates, Kain, Smith, McClellan, Fitch, Amy, Sweeney, Hamlin, and H. T. Gates in the month of

October, 1899, entered into an agreement to prospect and acquire mining property in Alaska for a period of two years from date, and did, under said agreement, in the year 1900, acquire mining properties in Alaska, including the 12 claims in controversy; that on October 8, 1900, they entered into a written agreement to the same effect as their verbal agreement; that on the same day they made an agreement with Abercrombie, giving him an equal share in the venture; that on March 23, 1901, Hamlin sold his interest to Birch, reserving a $3/44$ interest in the property already discovered. They admitted that McClellan entered into the employment of the Chittyna Exploration Company as superintendent of the assessment work on the Nicolai mines, but denied that he ever agreed to prospect or locate mines for it, or to hire men to do so. They denied that any of the mines located by the appellees were located for or belonged to said corporation, and alleged that at the time when the said corporation employed McClellan it had full knowledge of the McClellan Party, and knew that said party would prospect and acquire mining claims during the year 1900 for its own benefit, and understood that McClellan's contract was not to interfere with the McClellan Party; that during the summer of 1900, McClellan, acting for the said corporation, being short of supplies and horses, obtained from the McClellan Party the use of horses and a large amount of supplies, and agreed to return the provisions later in the season, or to pay the reasonable value of the same; that he did return the provisions, and paid for the use of the horses. They admitted that McClellan employed men to work on the Nicolai mines, and that he was paid a salary and the proper expenses and wages of his men. They denied that McClellan, in the year 1900, employed either Warner or Smith, and they admitted that he employed E. A. Gates and Kain, but they denied that the latter had any knowledge of the terms of McClellan's contract with the said corporation, or ever prospected or agreed to prospect for it. They alleged that Kain and E. A. Gates never did any prospecting or locating for themselves or for any one else while they were so employed. They denied that the 12 Bonanza claims were discovered or located by McClellan, E. A. Gates, or Kain, but alleged that they were discovered and located by Smith and Warner for the McClellan Party, while subsisting on their own supplies. They denied that McClellan admitted that the mines in controversy belonged to the said corporation. They denied the allegations of conspiracy and fraud. They admitted the conveyances to Abercrombie and to Millard, and the agreement with Benedict, but denied that they had knowledge of the facts alleged in the bill, or that they knew of or participated in any fraud. They admitted the transfer of said mines to the Alaska Copper Company, and alleged that the said company did the assessment work thereon for the year 1901. For an affirmative defense the answers alleged that the mines were discovered by Smith and Warner, and were duly located by them pursuant to the prospecting agreement made by the members of the McClellan Party in October, 1899, for and on behalf of said McClellan Party, and alleged continuance of possession thereof subject to the rights of the Alaska Copper Company, and that none of the appellees ever had any knowledge of any claim against their title until the commencement of the present suit. On February 2, 1903, the Chittyna Exploration Company replied to both answers. On February 9, 1903, B. F. Millard filed his answer to the bill. He prayed that he be adjudged to be entitled to the interest in the Bonanza group as alleged and admitted in the separate answer of McClellan. Millard was not served with the summons and complaint for the reason that the marshal was instructed by the complainant's attorney not to serve him, on the reason that Millard would accept service at any time when requested to do so. It appears from the record, and is not disputed, that Millard was in Alaska at the time of the commencement of the suit, and that he paid the marshal for serving the other defendants. The case was noticed for trial for the February term, and on February 6, 1903, the complainant moved to continue the case. On the merits of the motion affidavits were submitted on behalf of both the Chittyna Exploration Company and the appellees. On February 9th the motion for continuance was denied. On February 13th the Chittyna Exploration Company moved to vacate the order which had been made denying the continuance, and moved again for a postponement of the trial. Affi-

davits for and against this motion were filed. On February 14th, after argument of counsel and consideration of the affidavits, the motion was denied. On February 16, 1903, all the parties to the suit stipulated to refer the cause to a referee "to take testimony and report the same to the above-entitled court under the order of said court, with such restrictions and limitations as the court in said order may direct." On the same day the court, in pursuance of the stipulation, made an order referring the cause to Richard H. Geohegan to take testimony. The order recites: "And in order that all parties hereto may have opportunity to introduce all their evidence, the parties hereto may take further testimony only under the following limitations." The order proceeded to prescribe that the complainant in the bill was given until May 1st to take depositions without the District of Alaska. The appellees were given the month of May and the complainant from May 31st until July 11th to take depositions in rebuttal. All testimony was to be filed with the clerk of the court on or before September 2, 1903, in accordance with the order. Depositions were taken at Valdez, Alaska, Minneapolis, San Francisco, New York, and in the Philippine Islands. On November 2, 1903, the Copper River Mining Company, the appellant, having acquired the interest of the Chittyna Exploration Company, was substituted as complainant in the place of that company. On November 3, 1903, the appellant moved for permission to introduce further testimony. Affidavits were filed for and against the motion. After argument of counsel, the court denied the motion. The case was thereupon heard on its merits, and it was adjudged that the appellant had no interest in the mines in controversy, and its bill was dismissed. On November 30, 1903, the appellant moved for a new trial, basing its application on the grounds which it had urged as reasons for continuance. Opposing affidavits were filed, and on December 1st the motion was overruled.

W. B. Heyburn, Andrew F. Burleigh, and Volney T. Hoggatt, for appellant.

R. T. Harding and George C. Sargent, for appellees.

Frank D. Arthur and John A. Carson, for all appellees except Millard.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellees moved to dismiss the appeal on several grounds, the first of which is that the assignment of error and the petition for appeal had not been filed in the court below before the same were presented to a judge of this court for the allowance of the appeal. It is true that rule 11 of this court (31 C. C. A. cxlvi, 90 Fed. cxlvi) requires that the plaintiff in error or the appellant shall file with the court below his petition and assignment of error, and that no writ of error or appeal shall be allowed until such assignments of error have been filed. But we think the rule may be said to be sufficiently complied with when the order of allowance, together with the petition and the assignments of error, are filed in the court below. They were all filed in this case on the same date, and that is the date upon which it may be said that the order of allowance took effect.

The second ground of the motion is that the appeal could only be allowed by the judge of the trial court, and that a judge of this court was without jurisdiction to make such an order. The Code of Alaska (31 Stat. 414, c. 51) provides that this court shall have

jurisdiction to review by writ of error or appeal the final judgments and orders of the court below, and it further provides:

"That all provisions of law now in force regulating the procedure and practice in cases brought by appeal or writ of error to the Supreme Court of the United States or to the United States Circuit Court of Appeals for the Ninth Circuit, except in so far as the same may be inconsistent with any provision of this act, shall regulate the procedure and practice in cases brought to the courts respectively from the District Court for the District of Alaska."

In Brown v. McConnell, 124 U. S. 489, 8 Sup. Ct. 559, 31 L. Ed. 495, the court said:

"As appeals from territorial courts are to be taken in the same manner and under the same regulations as from the Circuit Courts (Rev. St. § 703 [U. S. Comp. St. 1901, p. 572]), it follows that citations on such appeals may be signed by a judge or justice of the territorial court or by a justice of this court."

We find nothing in the provisions of the Alaskan Code which is inconsistent with the application of the rule so announced to the present case. In Re McKenzie, 180 U. S. 536, 21 Sup. Ct. 468, 45 L. Ed. 657, the Supreme Court recognized the jurisdiction of this court to allow an appeal in a case where the judge of the District Court of Alaska had refused its allowance, and thereby must have affirmed the doctrine of Brown v. McConnell, and held it applicable to appeals from Alaska. It may be added that the order of allowance of the present appeal was made upon information that Judge Wickersham was at that time not within the District of Alaska. It is now asserted by the appellees that such was not the case, and that Judge Wickersham was in Alaska at that date, and remained there until some time in September, when he left for the Eastern States. The fact of the matter is not presented to the court except by these diverse statements of counsel, but, whatever may have been the fact, we think that a member of this court had the power to make the order allowing the appeal.

The third ground of the motion is that the appeal does not bring up any question of real controversy now existing between the parties. It appears from the transcripts filed in support of the motion that at the time when the decree was rendered in the present case there were pending in the court below two other suits, instituted after the present suit was begun, by the appellant herein as complainant against the Alaska Copper Company as defendant, in which suits the appellant sought substantially the same relief as against the Alaska Copper Company that was sought to be obtained in the present suit. The other appellees were not made parties defendant in those two suits. It further appears that after the final decree was entered in the present case decrees were entered in the two subsequent suits dismissing the respective bills of complaint. No testimony whatever was taken in those suits. They came on to be heard upon a motion of the Alaska Copper Company for a judgment on the pleadings on account of the default of the appellant in failing to plead to the supplemental answer of that company. The appellant, by its counsel, announced in open court that it did not desire to plead to the supplemental answer. The

defendant offered in evidence the judgment roll in the present suit. The decree in each case recited "that all the issues * * * have been determined and decided by this court in that certain other cause" (referring to the present suit), and it was ordered that the suits be dismissed. It is contended that by virtue of such decrees dismissing the appellant's bills in the two subsequent causes, which decrees were rendered after the entry of the final decree in the present case, two valid decrees unappealed from remain of record, substantially adjudicating in favor of the Alaska Copper Company and against the appellant the whole question of the right and title of the appellant to the mines in controversy in this suit. We do not so regard the records in the three cases. The present suit was the one, and the only one, in which the rights of the parties were tried and determined. The decrees in the two subsequent suits were entered as mere matters of form, and were rendered solely by reason of, and depended upon, the adjudication made in the present case. This is the suit in which the rights of the parties litigant were determined, and, if the decree in this case were reversed, nothing would remain upon which the decrees in the other suits could stand as a final adjudication of the rights involved. The motion to dismiss is denied.

It is assigned as error that the trial court denied the appellant's motion for a continuance of the cause. A continuance is not a matter of right, but it rests in the sound judicial discretion of the trial court, whose ruling thereon is not subject to review in an appellate court unless there has been abuse of discretion. Drexell v. True, 74 Fed. 12, 20 C. C. A. 265; Deitz v. Lymer, 61 Fed. 792, 10 C. C. A. 71. The ground of the motion for continuance in this case was the absence of some of the appellant's witnesses and the absence of two of its associate counsel. The motion for a continuance was made on February 6, 1903. The suit had been commenced on August 11, 1902. Service of process had been made on September 8, 1902, on all the appellees residing in the District of Alaska. They answered on October 8th. All the other defendants in the suit except Abercrombie answered on January 30, 1903. The motion for a continuance was accompanied by the affidavit of George M. Perine. It was made by him on August 2, 1902, nine days before the suit was commenced. It stated no ground for a continuance. It merely set forth substantially the facts alleged in the bill. The motion, however, specified as grounds of continuance that the defendants McClellan, Hamlin, H. T. Gates, and Benedict had not been served with process, but had voluntarily answered on January 30, 1903, and that their answer was filed without notice to the appellant that the same would be filed, or that the said defendants would submit themselves to the jurisdiction of the court without service; that said answer cannot reasonably be replied to without first submitting the same to the officers of the appellant in San Francisco; that two of the principal attorneys of the appellant, Hon. W. B. Heyburn and E. L. Campbell, were in Idaho and San Francisco, respectively, and could not be brought to participate in the trial if had at that term of the court, and that said attorneys

did not know that McClellan, Hamlin, H. T. Gates, and Benedict had voluntarily answered; that their voluntary appearance had taken the appellant by surprise, and had found it unprepared for trial; that many of the appellant's material witnesses were without the District of Alaska, and the appellant could not safely go to trial in the absence of George M. Perine, a material witness. There was no affidavit of the truth of those facts so set forth in the motion. In opposition to the motion for a continuance the appellees filed the affidavit of one John F. Rice, who deposed that Major Abercrombie was the only appellee who had not answered; that the affiant had been chief clerk under Abercrombie in the construction of a military road from Valdez into the interior for three years preceding December, 1901, and that in that month Abercrombie was by the War Department transferred to Vancouver, Wash.; that he had not since returned to Alaska; and that all these facts were common knowledge known to all the residents of Valdez, Alaska. They filed also the affidavit of Stephen Birch, general manager of the Alaska Copper Company, who stated that, acting upon advice of counsel, that company, after the commencement of the suit, had taken depositions of its principal witnesses in New York City, at Seattle, at San Francisco, and at Florence, Ariz., and had secured the personal attendance of witnesses, had brought McClellan from Princeton, Minn., Smith from Phœnix, Ariz., Kain from Portland, Or., Warner from Seattle, Wash., Fitch from San Jose, Cal., and Amy from Stockton, Cal., and had procured the personal attendance of its general counsel, Frank D. Arthur, from New York, and its counsel W. H. Gorham from Seattle, and that in making these preparations for trial, it had expended over $9,000. The appellees filed also the affidavit of Fred M. Brown, their local attorney at Valdez, who stated that Millard, the vice president of the appellant, was in Valdez during the summer and fall of 1902, and had left for the States about December 7, 1902; that the affiant had, on or about the 1st of December, personally notified Mr. Hubbard, one of appellant's attorneys at Valdez, that the appellees would insist upon trial of the suit at that term; that Mr. Hubbard had told him that he had notified Mr. Campbell that the appellees would insist on the trial at the first term of the court; that at different times during December, 1902, and January, 1903, Mr. Hubbard had notified affiant that he had done all he could to notify the appellant and its officers and attorneys that the appellees would insist upon a trial as aforesaid; and that the appellees were going to large expense in bringing their witnesses and attorneys to Valdez. The appellant filed the counter affidavit of its attorney O. P. Hubbard, in which he stated that he was not familiar with the records and files of the appellant, the same being kept at its head office in San Francisco; that he believed that the appellant had receipts and vouchers and other instruments in writing to prove the allegations of the complaint; that Perine was a necessary and a material witness, whose personal attendance could not be secured at that term of the court; that Millard was a necessary witness, and had gone out of the District of Alaska. The affidavit made no showing of the testimony

that was expected of Millard further than that he had had conversations with some of the appellees. On February 9, 1903, the court denied the motion. We find in the record no sufficient ground for saying that in so doing the court abused judicial discretion. The affidavits in support of the motion for continuance failed to show diligence in procuring the attendance of the appellant's witnesses, nor was the absence of appellant's counsel, under the circumstances, necessarily a ground for a continuance. The appellant was represented by three of its attorneys at Valdez. Mr. Campbell had, according to the showing, been notified at San Francisco in December that the appellees would insist upon trial at the first term of the court. He had the opportunity to telegraph to Mr. Heyburn, in Idaho, at the time when he received his notice. On February 13, 1903, the appellant made a second motion for a continuance. The motion was supported by the affidavit of Volney T. Hoggatt, to which exhibits were attached, consisting of affidavits and copies of affidavits from others. One of the affidavits was that of a physician in Santa Clara, Cal., stating that Perine was a patient under his charge, "suffering from heart trouble, with constitutional disturbances," and that it would seriously impair his health and endanger his life to travel to Alaska at that time; but that, if Perine would follow his physician's treatment, and refrain from undue and unusual excitement, he might be cured of his illness in four or five months. Another affidavit was that of E. L. Campbell, who admitted that in November he had received notice that the appellees were taking depositions of their witnesses in Arizona, California, Washington, Oregon, and Minnesota; that it would be impossible for him (Campbell) to attend the trial on account of his professional business in France, England, and Mexico; "that the witnesses, by whom plaintiff will be able to establish the facts stated in its complaint, are widely scattered, and great difficulty has been experienced in locating such witnesses; that the plaintiff had used the utmost diligence during the months of December and January to obtain knowledge of the present residence of such witnesses, and has been unable to procure the depositions or attendance of some of said witnesses up to the present time." Another affidavit was that of Hon. W. H. Heyburn, in which he stated that it would be impossible for him to attend upon the trial during February or March, 1903, for the reason that on March 4th he was compelled to be in Washington as United States Senator from Idaho, and that in February he would be compelled to attend a term of this court in San Francisco. The appellant filed also the affidavit of James McCarthy, one of its stockholders. He deposed that he had spent Christmas in San Francisco with Perine, and that Perine had told him that the cause would probably be tried in February or March, 1903, and had asked him to ascertain the whereabouts of certain witnesses. The appellees filed counter affidavits, several of which it is not necessary now to review. One was that of George C. Sargent, an attorney of San Francisco, who stated that on January 22, 1903, he had called at Perine's office in San Francisco, and was informed that Perine was engaged in his private office; that two

days later he had conversed over the telephone with Perine on business. There were other affidavits tending to show that Perine was well on January 26th and 27th, and was traveling from place to place in Southern California on business. Upon the second application for a continuance, as upon the first, there was absence of showing of diligence, and we are unable to discover that there was abuse of discretion in the action of the court in denying the motion.

But if, indeed, the appellant was placed at a disadvantage on account of surprise, and the absence of its material witnesses, its rights, we think, were fully conserved by the order of the court made on the stipulation of the parties to refer the cause to a referee to take the testimony. The stipulation was that the cause be referred to a referee to take testimony and report the same to the court under an order of the court, "with such restrictions and limitations as the court in said order may direct." The court, on February 16, 1903, made an order requiring that the testimony be taken and filed on or before September 2, 1903. A large amount of testimony was taken, and it is embodied in the very voluminous record which is before us. Testimony was taken before the referee at Valdez beginning on February 19, 1903, and continuing until March 11, 1903. Depositions were taken in San Francisco, in Minneapolis, in New York, and in the Philippine Islands. On October 13, 1903, the appellees moved the court to fix a date for the final hearing. The appellant then applied to the court for leave to introduce further testimony. The court required that the application be submitted in writing, which was done. In support of the application the appellant filed the affidavit of Volney T. Hoggatt, and the appellees filed affidavits in opposition thereto. The case was then called for argument. The appellant declared that it had not closed its testimony; that it did not rest its case. The appellees claimed that the appellant had rested its case upon the testimony taken under the stipulation and the order of the court, and that the taking of its testimony had closed on July 11, 1903, under that order. The court ruled in accordance with the appellees' contention, and denied the application of the appellant to introduce additional oral testimony, and proceeded with the final hearing.

It is assigned as error that the court compelled the appellant to stipulate to take depositions on open commissions, and it is contended that the stipulation was not voluntary, but was made under duress. This contention is not sustained by the record. The bill of exceptions shows that, after the motion for a continuance had been overruled, the court stated that, unless the appellant agreed to a reference, the case would be set down for immediate trial, and that the appellant was given two days in which to consider which course it would pursue. It chose to agree to the order of reference. There was no duress in this. Having failed to satisfy the court with the merit of its motion for a continuance, it was permitted to exercise its option between proceeding to trial at that term or consenting to take the testimony as suggested by the court. It exercised its own free choice in the matter. Having taken the benefit of the order of the court and submitted its testimony thereun-

der, it is in no attitude to assert that the court erred in the premises.

It is urged that the order of reference was illegal, for the reason that it did not require that the witnesses who were produced before the referee should read over and subscribe their testimony. There is no provision in the Alaska Code requiring that witnesses who are examined before a referee on such an order shall sign their testimony. Carter's Code of Alaska, p. 293, § 724, and the statutes of Oregon in force in Alaska before the Code, expressly permitted such an order of reference (section 827, B & C. Comp. Or.). But if there was error of the court in omitting to insert in the order a requirement of that nature, the appellant should thereafter have objected to the introduction of the evidence. As it was, the appellant, although it objected to the form of the order, took its testimony thereunder, and, so far as the record shows, made no further objection on the ground of the alleged defect of the order. If insufficient time to take all the evidence was allowed by the order of the court, it was the duty of the appellant to move for further time before the expiration of the time fixed in the order. It made no such application until more than two months after the expiration of the time.

It is assigned as error that the court, upon the evidence in the case, found in favor of the appellees on the merits of the controversy, and dismissed the bill. After a careful consideration of the evidence which is before us, and which we find it unnecessary to review at length, we think that the conclusion which was reached by the trial court as sustained by the very decided weight of the testimony.

The decree of the District Court is affirmed.

ROSS, Circuit Judge (dissenting). I am unable to agree to the judgment in this case. It appears from the record that the court below refused to hear the testimony of certain witnesses produced by the complainant on the trial, for the reason that the time fixed by the court for the taking of the evidence in the case in its order of reference had expired. That order of reference, it appears from the record, was based upon a so-called stipulation of the parties, which, in my judgment, cannot be properly regarded as a voluntary one. It appears that the cause only came to issue on the 9th day of February, 1903. It involved controverted questions of fact upon which, as the record shows, a large amount of testimony was taken; the record comprising eight large volumes of printed matter. It seems to me that each party to such a suit is legally entitled to a reasonable time after issue joined within which to prepare for trial. Yet the record contains this bill of exceptions:

"On February 14, 1903 [only five days after the case had come to issue], this cause coming on for hearing after application [for] continuance had been overruled, over objections and exceptions of plaintiff the court announced in open court that the case would be referred for the purpose of taking the testimony, and attorneys for plaintiff objected to such reference; whereupon the court stated that, if plaintiff did not agree to such reference, that the case would be set down for immediate trial; and the hearing was then continued till the 16th of February, at 10 o'clock a. m., at which time the attorneys for plaintiff signed an agreement to refer the case, for the reason they were compelled so to do or at once go to trial. The above and foregoing bill

of exceptions is allowed the 16th day of February, 1903. James Wickersham, District Judge."

It was upon that so-called stipulation that the order of reference was based, which was held by the court below to preclude the complainant from introducing testimony of witnesses that it produced in court at the time of trial. I am unable to regard the so-called stipulation as a voluntary one, or to give my sanction to such proceedings. I therefore respectfully dissent from the judgment given here.