## BELVIN v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.  July 1, 1919.)

### No. 1708.

1. CONSPIRACY ☞43(10)—INDICTMENT SUFFICIENT TO CHARGE CONSPIRACY TO DEFRAUD UNITED STATES.

An indictment charging that defendants were employés of a firm of contractors for government work, one being in charge of the pay roll; that under the contract the contractors were to be reimbursed for their expenditures and paid a commission as their compensation; that defendants conspired to have one of them, employed as a fireman, placed on the pay roll as an engineer, whereby he would receive a higher rate of pay; and that he was so placed by his codefendant—held sufficient to charge a conspiracy to defraud the United States.

2. CONSPIRACY ☞47—EVIDENCE SUSTAINED CONVICTION.

Evidence held to sustain a conviction for conspiracy to defraud the United States.

3. CRIMINAL LAW ☞786(1)—JURY MAY CONSIDER INTEREST IN WEIGHING TESTIMONY OF DEFENDANT.

Where a defendant testifies in his own behalf, the jury may properly be instructed to consider his interest in weighing his testimony.

4. CRIMINAL LAW ☞1151—REFUSAL OF CONTINUANCE ON ABSENCE OF WITNESSES IN DISCRETION OF COURT.

Refusal of continuance to a defendant on the ground of absence of witnesses held within the discretion of the court, and not subject to review, unless discretion has been grossly abused.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Criminal prosecution by the United States against George W. Belvin and another.  Judgment of conviction, and defendant Belvin brings error.  Affirmed.

Nathaniel T. Green and Daniel Coleman, both of Norfolk, Va., for plaintiff in error.

Hiram M. Smith, U. S. Atty., of Richmond, Va.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge.  This was a criminal action, tried in the District Court for the Eastern District of Virginia.  The defendants were found guilty, and the defendant Belvin was sentenced to the penitentiary, and defendant Hoffman was given a jail sentence.  The defendant Belvin excepted to the judgment of the court, and the case as to Belvin comes here on a writ of error.  The plaintiff in error will be referred to as defendant, and the defendant in error will be referred to as plaintiff; such being the relative positions parties occupied in the court below.

The indictment charges that the plaintiff in error, George W. Belvin, and one Karl Hoffman, did unlawfully conspire, combine, etc., to defraud the United States of America.  The facts alleged in the indictment as constituting the conspiracy are:  That the United States

had a contract with a partnership known as Porter Bros. for the construction of certain buildings and doing certain other work for the government near Norfolk, Va.; that this contract contained provisions by which the United States was to pay the full costs of the work done thereunder, and Porter Bros. were to be paid a certain percentage of such costs if they amounted to certain sums stated therein, and a stipulated amount if such costs amounted to certain other sums stated therein; that Belvin and Hoffman knew of such provisions; that Porter Bros. employed Belvin as a fireman and Hoffman as a division timekeeper in said work; that the rate of pay or wages of Porter Bros. for the position of fireman (the position occupied by Belvin) was the rate of 42 cents an hour, while they, Porter Bros., paid engineers at the rate of 72½ cents an hour; that Belvin and Hoffman unlawfully and feloniously agreed that Belvin, though occupying only the position of fireman, should be falsely and fraudulently "carried upon the pay rolls of said Porter Bros." as an engineer, and receive the higher rate of pay of engineer, instead of the lower rate of firemen; that in pursuance of such agreement Hoffman illegally approved and authenticated for entry "upon the pay rolls of said Porter Bros." a time card of Belvin, wherein Belvin was designated as an engineer, and that Belvin was in accordance with said authenticated time card entered "upon the pay rolls of the said Porter Bros." as an engineer; and that "the said Porter Bros., through their duly authorized officers and employés, issued in the name of George W. Belvin a check and voucher for payment to the said George W. Belvin for compensation as an engineer, whereas in truth and fact the said George W. Belvin was not an engineer, but a fireman," etc.

[1] The demurrer is based upon two grounds: (a) That the indictment does not charge a violation of any statute of the United States; (b) that the indictment is vague and indefinite, and does not set forth sufficient facts to enable the defendant to properly assert his defense. The third ground of demurrer appears to have been abandoned.

It is insisted by counsel for defendant that the indictment sets out a conspiracy to defraud the Porter Bros., but that it does not set out a conspiracy to defraud the United States; also that the indictment is not full enough, and that the court will have to supply much and infer much in order to sustain it.

It appears that the defendants Hoffman and Belvin were indicted for conspiracy to defraud the United States, and the overt act alleged is that they padded the pay roll of the Porter Bros. It appears that Porter Bros. had entered into a contract with the government to construct the quartermaster terminal or army base near Norfolk. The contract in question contained the following clause; Porter Bros. contract (extracts):

"Article 2. *Cost of the Work.*—The contractor shall be reimbursed in the manner hereinafter described for such of its actual net expenditures in the performance of said work as may be approved or ratified by the contracting officer and as are included in the following items:

"(a) All labor," etc.

"Article 3. *Determination of Fee.*—As full compensation for the services of the contractor, \* \* \* if the cost of the work is under $100,000, a fee of ten per cent. (10%) of such cost. [Then follows a scale of compensation to the contractor, under varying amounts, to and including $3,500,000.]"

The contract is signed:

"Porter Brothers, by R. S. Porter (a member of the copartnership). United States of America, by I. W. Littell, Brigadier-General, Quartermaster Corps, N. A., Contracting Officer."

Any amounts paid out by Porter Bros. in excess of its "net expenditures in the performance of said work," in the absence of any knowledge on the part of the government, would have necessarily resulted in a loss to that extent to the United States. It is not necessary, in order to secure the conviction of one charged with conspiracy to allege or prove that the object of conspiracy has been fully consummated. It is sufficient if there has been the common meeting of minds to the accomplishment of a certain object, and that some overt act shall have been done in pursuance of such conspiracy.

The defendants sought by this conspiracy to do that which would necessarily result in defrauding the government: Porter Bros. could not in any view of the case lose a cent by virtue of this transaction. Their pay rolls were only used as a means by which the defendants could make a false charge, the burden of which would fall, not upon Porter Bros., but upon the government.

In the case of Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392, the defendant and two others, one of whom was General Superintendent of the Division of Free Delivery of the Post Office Department of the United States, were charged with a conspiracy against the United States; the charge being that by manipulation of bids a company, of whom one of the defendants was a representative, should receive the contract for mail carriers' satchels for the Post Office Department. Among other things, it was alleged that the conspirators agreed that in the event of success the company would pay a certain sum to the three defendants. It was not alleged, nor does it appear, that the government was defrauded, that the government paid any higher price for the satchels, or that the satchels furnished were of inferior quality to what could have been obtained if the conspiracy had not been entered into. In that case the demurrer interposed was to the effect that the indictment did not state any offense under section 5440 of the Revised Statutes of the United States (Comp. St. § 10201), nor did it set forth any offense under any statute, or the common law; furthermore, that it did not appear how the government would have been defrauded by such conspiracy. The Supreme Court, in that case, discussing this phase of the question, said:

"The agreement is alleged to have been an unlawful and fraudulent one, wrongfully and corruptly to defraud the United States. \* \* \* The fraud might be perpetrated by getting the contract at a higher price than otherwise would have been obtained, or, if already obtained, then the United States might be defrauded by the General Superintendent accepting improper satchels, not made of the materials or in the manner specified in the contract, or by his requiring the delivery of more satchels than were sufficient for the

wants of the department. It is not necessary in such a case as this (of an alleged unlawful and corrupt contract) to allege in the indictment which of the various ways the government might be defrauded was in the minds of the conspirators, or that they all were. Dealy v. United States, 152 U. S. 539, 543 [14 Sup. Ct. 680, 38 L. Ed. 545]. Such a corrupt agreement, if carried out, would naturally, if not necessarily, result in defrauding the United States by causing it to pay more for satchels than was necessary, or for more satchels, or possibly inferior ones, than it otherwise would, but for the corrupt agreement set forth. The indictment was sufficient. United States v. Hirsch, 100 U. S. 33 [25 L. Ed. 539]; Hyde v. Shine, 199 U. S. 62, 82 [25 Sup. Ct. 760, 50 L. Ed. 90]; United States v. Keitel, 211 U. S. 370 [29 Sup. Ct. 123, 53 L. Ed. 230]."

The following from Atwell on Federal Criminal Law, on page 221, is very much in point:

"If the indictment alleges, in proper terms, the formation of the conspiracy for either one of the inhibited purposes mentioned in the statute, and then sets out the offense for which the conspiracy was formed with sufficient certainty to apprise the defendant thereof, and then the proof shows that the conspiracy existed as charged in the indictment, and that, if such conspiracy existed, the overt act charged was committed in furtherance of such conspiracy, and that the defendant was one of the conspirators, a case will have been made out, both by allegation and proof."

[2] It is insisted in the fourth and fifth assignments of error that there was not sufficient evidence to prove that Belvin knew that the government would suffer by his wrong. In referring to this matter the court said:

"The court further charges the jury that the said Hoffman and Belvin must have had a specific intent, which intent must be proven by the government beyond all reasonable doubt, to defraud the United States government, before they can find the accused guilty as charged in the indictment."

The witness Hoffman, who testified on behalf of the government as to this point, said:

"At the time the work started at the base the newspapers carried a whole column or more relative to adjusting percentages and scale of the fees contractors were to receive for the government work. We, Belvin and I, had discussed that. We had been wondering if Porter Bros. were getting 10 per cent. on actual job work, and the piece in the paper explained just how much they did get."

Witness Gaughan also testified that the government settled with contractors for the cost of construction, etc., weekly and daily, in fact, on material, but on labor once a week, on a weekly pay roll. Porter Bros. were reimbursed for the preceding week by Wednesday or Thursday of the following week. Witness also testified that he knew Hoffman, but he did not know Belvin. He said:

"Hoffman has never spoken to me directly about this case. He turned over some money to me, $452. Nothing was said about it, and I gave him a receipt for it. I have that money now."

We think there was sufficient evidence to warrant the jury in inferring that Belvin had knowledge of the fact that the government would suffer by his wrongdoing. Hoffman being an accomplice of the defendant Belvin, the court instructed the jury to receive his evidence with caution; also instructed it as to the weight to be given testimony of Hoffman. This was purely a question for the jury, the

jury having heard the evidence under proper instructions from the court, and we are not inclined to disturb the verdict.

[3] The seventh assignment of error challenges that portion of the charge of the court which refers to the weight to be given defendant's evidence when he testifies in his own behalf. The following is that portion of the charge to which an objection is made:

"The defendant Belvin in this case has testified in his own behalf, as he has the right to do under the laws of the United States, and you shall give to his evidence the same consideration as you give to that of other witnesses, having in mind, however, the deep personal interest which he has in your verdict.".

The court simply announced the rule, as we understand, which is universal where one testifies in his own behalf. The rule is well stated in Underhill on Criminal Evidence, par. 58, p. 100, wherein a number of cases are cited. It is as follows:

"* * * But the court must (without, however, giving too much prominence to the fact) instruct them that they should or that they may consider the fact that he is interested in the outcome of the trial, and in testifying in his own behalf, in determining his credibility."

We think the court's charge in this respect was strictly in accordance with the well-settled rule, and therefore we do not deem it necessary to enter into a discussion of same.

[4] The eighth assignment of error is to the effect that the court below erred in refusing to continue the trial of this case on the ground of the absence of alleged material witnesses. The court below, in refusing to grant a continuance, said:

"The motion to continue the trial of the said defendant, because of the absence of his two said witnesses, the court overruled, and the court certifies that the materiality of the testimony of the said two witnesses was not apparent to the court, nor did it appear that the defendant would ever be able to secure the presence of the said witnesses, and that one of the material witnesses for the government resided in the state of Indiana, and to have permitted a continuance of the case would have necessitated that this witness return to Norfolk for the trial, and it further did not appear that the defendant or his counsel had used proper diligence in attempting to secure the witnesses Bowles and Liston."

It appears that, while the affidavit upon which defendant based its motion for the continuance contains an allegation to the effect that the evidence of the two witnesses was material, it does not set forth the facts which defendant expected to prove by the witnesses, nor does it appear that the evidence of such absent witnesses was material to the issue, and there is no allegation as to why their presence could not be had at that term of the court; nor is it alleged that in the event of postponement the presence of such witnesses could be had at a future date. The general rule is to the effect that the refusal of the trial court to grant a continuance is a matter of discretion of the court, and never subject to review, unless it shall appear that such discretion has been grossly abused. In the case of United States v. Rio Grande et al., 184 U. S. 416, 22 Sup. Ct. 428, 46 L. Ed. 619, Mr. Justice Harlan, in delivering the opinion of the court, stated the rule as follows:

"We think that the District Court, upon the showing made by the government, might well have granted the motion to postpone the final hearing to a date later than that fixed. * * * But the motion for a continuance of the cause, and the application for a rehearing, were addressed to the discretion of the trial court; and it is well settled that matters of discretion or practice cannot, generally speaking, be made the basis of an appeal, and do not constitute in themselves grounds for the reversal of a final decree."

See Dexter v. Kellas, 113 Fed. 48, 51 C. C. A. 35; Myers v. Kessler, 142 Fed. 730, 74 C. C. A. 62; Copper Mining Co. v. McClellan, 138 Fed. 333, 70 C. C. A. 623; St. Louis Stave Co. v. United States, 177 Fed. 178, 100 C. C. A. 640; State of Rhode Island v. State of Massachusetts, 11 Pet. 226, 9 L. Ed. 697; Myers & Axtell v. Trice, 86 Va. 835, 11 S. E. 428, in which the court said, quoting the late John B. Minor:

"The continuance of a cause to another term of court is a matter peculiarly within the discretion of the court below, and the United States courts hold it, as they hold all others matters of discretion, to be no ground upon which error can be imputed."

The sixth assignment is to the effect that the court below erred in refusing to grant instructions 1, 2, 3, 4, 5, and 6. We have carefully considered these instructions, together with the charge as given by the court. The charge covers practically every point raised in these instructions which we think is a substantial compliance with the law, and, such being the case, we feel that the court was warranted in refusing to grant the same.

After giving a most thorough and careful consideration of the contentions urged by the defendant, we are impelled to the conclusion that the defendant received a fair and impartial trial. Therefore, for the reasons stated, we are of opinion that the judgment of the court below should be affirmed.